John HUBICKI, Appellant,

v.

ACF INDUSTRIES, INCORPORATED,
Appellee.

John HUBICKI, Appellant,

v.

UNITED STEELWORKERS OF AMER-
ICA and ACF Industries, Inc.,
Appellees.

Nos. 72–1460 and 72–1712.

United States Court of Appeals,
Third Circuit.

Argued April 6, 1973.

Decided Aug. 20, 1973.

Ambrose R. Campana, Campana & Campana, Williamsport, Pa., for appellant.

J. Thomas Menaker, McNees, Wallace & Nurick, Harrisburg, Pa., and David L. Gore, Asst. Gen. Counsel, Pittsburgh, Pa., Bernard Kleiman, Kleiman, Cornfield & Feldman, Chicago, Ill., for appellees.

Before McLAUGHLIN, ROSENN and JAMES HUNTER, III, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

This is a consolidated appeal from two orders issued in separate actions by the United States District Court for the Middle District of Pennsylvania. In the first case, No. 72–1460, plaintiff Hubicki sued defendant ACF Industries, Inc. ("ACF"), seeking damages for his allegedly wrongful discharge from employment and reinstatement to his former job. ACF moved for summary judgment which was granted by Judge Herman on November 4, 1971, on the ground that plaintiff's complaint and affidavit failed to state a cause of action. Hubicki then instituted a second lawsuit, No. 72–1712, this time against ACF and his union, the United Steelworkers of America ("the union"). This case was assigned to Judge Muir who entered a judgment on the pleadings in favor of ACF on the theory that plaintiff's claim was *res judicata*, D.C., 344 F.Supp. 1247. He also granted the union's motion for summary judgment after finding that there existed no triable issue of material fact and that the union should prevail as a matter of law. Plaintiff appeals from all of these rulings and we affirm.

Jurisdiction is founded in § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a). *See* Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962).

I

When Judge Herman granted ACF's motion for summary judgment in the first action, he had before him only plaintiff's very short complaint and his affidavit opposing defendant's motion. The essence of the complaint is that Hubicki had been employed by ACF from May, 1947 until February 25, 1970, when he was wrongfully discharged in violation of the master collective bargaining agreement between the company and the union. In his affidavit, Hubicki states that his house burned down on February 1, 1970, and that he left work two weeks later, with permission, in order to repair another house so that his family would not have to continue to live with relatives. He admits that he might have received a letter from ACF dated February 24, 1970, notifying him of the termination of his seniority rights, but says that he does not remember either receiving or signing for it and that its contents did not come to his attention until early April, 1970. Shortly thereafter, Hubicki discussed his problem with Chairman Ely of the union grievance committee. Ely tried to get plaintiff reinstated but ACF refused, and he then informed Hubicki that there was noth-

ing else the union could do in his behalf since he had failed to file a grievance within thirty days as required by the contract. Hubicki also claims that he made several unsuccessful attempts on his own to persuade ACF to permit him to present a grievance.

The collective bargaining agreement between ACF and the union provided a complete procedure for initiating and processing grievances.[1] Under Section 7–2, any employee with a request or complaint was directed to meet with his foreman to discuss the matter. If the complaint could not be resolved in this manner, and if it involved the "interpretation, application of, or compliance with the provisions of this Agreement," then it was defined as a grievance by Section 7–3. Section 7–4 required that a grievance not settled within two days under Section 7–2 must be filed in writing within thirty days in order to be considered further.

As Judge Herman correctly pointed out, the law is clear "that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress." Republic Steel Corp. v. Maddox, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965). *See* Desrosiers v. American Cyanamid Co., 377 F.2d 864 (2d Cir. 1967); Woody v. Sterling Aluminum Products, Inc., 365 F.2d 448 (8th Cir. 1966), cert. denied, 386 U.S. 957, 87 S.Ct. 1026, 18 L.Ed.2d 105 (1967); Broniman v. Great Atlantic and Pacific Tea Co., 353 F.2d 559 (6th Cir. 1965), cert. denied, 384 U.S. 907, 86 S.Ct. 1343, 16 L.Ed.2d 360 (1966). The district court found that no such attempt had been alleged in the present complaint, even when read in conjunction with Hubicki's affidavit, and thus it concluded that the allegations were insufficient to state a cause of action and that ACF should prevail on its motion for summary judgment.

■■■ Plaintiff challenges the district court ruling on three grounds. His first contention is that his complaint and affidavit established a valid cause of action. We disagree. It is not asserted in either Hubicki's complaint or his affidavit that he ever took the first step and contacted his foreman about his grievance as required by Section 7–2 of the collective bargaining agreement. Equally important, there is no allegation that plaintiff ever requested the union's help in filing a written grievance in conformance with Section 7–4. In the final paragraph of his affidavit, Hubicki does state that he asked ACF

---

1. ARTICLE VII
 ADJUSTMENT OF GRIEVANCES
 "Section 7–1 *Purpose*
 "The purpose of this Article is to provide opportunity for discussion of any request or complaint and to establish procedures for the processing and settlement of grievances as defined in Section 7–3 below.
 "Section 7–2 *Discussion of Request or Complaint*
 "Any employee who believes that he has a justifiable request or complaint shall discuss the request or complaint with his Foreman, with or without the department Steward being present, as the employee may elect, in an attempt to settle the matter.
 "Section 7–3 *Definition of Grievance*
 "The word 'grievance' as used in this Agreement is limited to a complaint which has not been settled as a result of the discussion required by Section 7–2 and which involves the interpretation, application of or compliance with the provisions of this Agreement.
 "Section 7–4 *Grievance Procedure*
 "A grievance which has not been settled within two (2) work days (excluding Saturday and Sunday) as a result of the discussion required in Section 7–2 above, to be considered further, must be filed in writing within thirty (30) days from the date it was found to exist by the employee or the Union. Grievances shall be filed in writing on grievance forms furnished by the Company and shall be dated and signed by the employee and his department Steward. Any grievance shall specify the nature of the grievance together with a statement of the relief sought, and shall include information and facts to aid in arriving at a fair, prompt, and informed decision."

several times to allow him to present a grievance but that the company refused. However, for a discharged employee to bring an action against his employer without first exhausting his contractual grievance remedies, the employee must be able to "prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance." Vaca v. Sipes, 386 U.S. 171, 186, 87 S.Ct. 903, 914, 17 L. Ed.2d 842 (1967). Since Hubicki did not assert lack of fair representation on the part of his union, and since he did not allege or show any attempt to use the contract grievance procedure, we believe that the district court properly concluded that plaintiff failed to state a cause of action upon which relief could be granted. Vaca v. Sipes, *supra*, and Republic Steel Co. v. Maddox, *supra*.

Plaintiff's next argument is that the district court should have allowed him to amend his complaint since Fed.R.Civ.P. 15(a) provides that court permission for amendments "shall be freely given when justice so requires." We have examined the record in this case, and it does not appear that plaintiff ever made a motion to amend his complaint.[2] Consequently, we find that this argument is on its face completely lacking in merit.

The last issue in plaintiff's first appeal is whether Judge Herman was warranted, after considering plaintiff's complaint and affidavit, in granting ACF's motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Plaintiff's argument on this point is less than clear, but he apparently feels that his complaint was not disposed of on the merits and that summary judgment was therefore improper.

■ Rule 56(b) authorizes a defending party to move "at any time" for a summary judgment in his favor. Such a motion may be made before pleading to

the complaint, Hartmann v. Time, Inc., 166 F.2d 127, 131 (3d Cir. 1947), cert. denied, 334 U.S. 838, 68 S.Ct. 1495, 92 L.Ed. 1763 (1948), and Gifford v. Travelers Protective Ass'n, 153 F.2d 209, 210–211 (9th Cir. 1946), and supporting affidavits are not necessary. Chambers v. United States, 357 F.2d 224, 227 (8th Cir. 1966); Reynolds v. Needle, 77 U.S. App.D.C. 53, 132 F.2d 161, 162 (1942). Hence, defendant's motion in the present case was not premature.

■ Rule 56(c) provides that a motion for summary judgment shall be granted if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. Since the only facts before Judge Herman were those contained in Hubicki's complaint and opposing affidavit, and since we have already upheld the district court's finding of no cause of action, it is clear that summary judgment was properly granted in this case and that the decision went to the merits. As another court of appeals has observed.

> "The purpose of our summary judgment rule is to expeditiously determine cases without necessity for formal trial where there is no substantial issue of fact . . . *If no factual dispute exists and the complaint does not state a cause of action, it should be disposed of by summary judgment* rather than exposing the litigants to unnecessary delay, work and expense in going to trial when the trial judge would be bound to direct a verdict in movant's favor after all the evidence is adduced." ·Chambers v. United States, *supra*, 357 F.2d at 227. (emphasis added)

Plaintiff argues that instead of granting ACF's motion for summary judgment, the district court should have treated it as a Rule 12(b)(6) motion to

---

2. After summary judgment was granted in favor of ACF, plaintiff did make a motion captioned "Plaintiff's Motion to Alter or Amend Judgment under Rule 60(e)." The Federal Rules of Civil Procedure do not contain any such rule, and the district court treated the motion as one filed under Rule 60(b)(6) and denied it. While we can only speculate, perhaps plaintiff has somehow confused this motion with a Rule 15(a) motion to amend a pleading.

dismiss for failure to state a claim for relief. Assuming that we agreed with plaintiff, which we do not, it would not help him here. First, it should be noted that plaintiff never suggested this transformation to the district court, even though he filed a brief opposing summary judgment. Second, the last sentence of Rule 12(b) provides as follows:

> "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. . . ."

Consequently, when Hubicki submitted his opposing affidavit, it is evident from this section of Rule 12(b) that even if ACF's motion had been to dismiss rather than for summary judgment, the district court should at that juncture have considered it as a motion for summary judgment.

 Finally, even if we accepted plaintiff's argument and held that the motion granted by the district court was in actuality a Rule 12(b)(6) one, this would amount to the proverbial distinction without a difference. Plaintiff's rationale for requesting this "remedy" appears to be his belief that a dismissal for failure to state a claim is not a defense in bar but serves only to abate the action.[3] However, while it is true that Rule 12(b)(1-5) and (7) motions involve matters in abatement only, a Rule 12(b)(6) motion raises matters in bar and results in a judgment on the merits.

2A Moore's Federal Practice ¶ 12.09 at 2313 (2d ed. 1972); 6 *id.* ¶ 56.02[3], at 2034. *See* Blackhawk Heating & Plumbing Co. v. Driver, 140 U.S.App.D.C. 31, 433 F.2d 1137, 1144 (1970); Glick v. Ballentine Produce Co., 397 F.2d 590, 593 (8th Cir. 1968). In light of this, the granting of a motion to dismiss for failure to state a claim instead of one for summary judgment would not have aided plaintiff in this case.

For all the reasons above, we conclude that Judge Herman's November 4, 1971 order in 72–1460 granting ACF's motion for summary judgment must be affirmed.

## II

Two months after summary judgment was granted against plaintiff in his first lawsuit, he filed a second complaint against his union alleging that he was wrongfully discharged by ACF and that the union had arbitrarily, capriciously and without reasonable cause refused to employ the contract grievance machinery to protect his interests. This complaint was opposed by a motion to dismiss for failure to join an indispensable party, whereupon plaintiff filed an amended complaint in bifurcated form joining ACF as a defendant. The only new allegation against ACF that did not appear in the first complaint is set forth as paragraph 11:

> "11. Plaintiff had asked Defendant [ACF] to allow him to present a grievance under the terms of the Collective Bargaining Agreement, but the Defendant wrongfully refused to allow Plaintiff to do so."

---

3. Martucci v. Mayer, 210 F.2d 259 (3d Cir. 1954), is erroneously relied upon by plaintiff to support this proposition. In *Martucci*, we held that when a plaintiff fails to join an indispensable party, the proper remedy is to dismiss the complaint rather than grant summary judgment since the trial court has no jurisdiction to determine the merits of the case. As a result, the action is abated and the plaintiff is not barred from bringing another lawsuit based upon the same cause of action. In the present case, however, even if we treated ACF's motion for summary judgment as a motion to dismiss, the motion would not be a Rule 12(b)(7) one for failure to join an indispensable party but rather would be a Rule 12(b)(6) one for failure to state a claim upon which relief can be granted. As we indicate in the opinion, this motion, if granted, goes to the merits and is a matter in bar, not abatement.

ACF answered this second complaint with a motion for judgment on the pleadings on the grounds of *res judicata*, and the union moved for summary judgment. On June 27, 1972, Judge Muir entered an opinion and order granting both of these motions.

Plaintiff's primary contention with respect to ACF on this appeal is that his second complaint stated a cause of action against the company and was not barred by the doctrine of *res judicata*. This doctrine was explained by the Supreme Court in Commissioner v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948), as follows:

> "The general rule of *res judicata* applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim on demand, but as to any other admissible matter which might have been offered for that purpose.' Cromwell v. County of Sac, 94 U.S. 351, 352, 24 L.Ed. 195. The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment."

■ A comparison of the present case against ACF with the one decided by Judge Herman shows that the parties are identical, that the operative facts are all the same, and that the complaint allegations and the relief sought are nearly the same. As we have already noted, only paragraph 11 of the second complaint is new, and even this allegation was contained in paragraph 10 of Hubicki's affidavit[4] in the first case which was specifically considered by Judge Herman along with the complaint in determining that plaintiff failed to state a cause of action. Consequently, we think that the two suits involve indistinguishable claims for relief, and that the first judgment is conclusive as to all matters relating to ACF and its alleged wrongful termination of plaintiff's employment.

■ Plaintiff also asserts that the first ACF case does not support a defense of *res judicata* because it was disposed of by summary judgment for failure to state a cause of action and thus did not go to the merits. We reject this argument since earlier in this opinion we held that summary judgment was properly entered in the first case, and the law is clear that summary judgment is a final judgment on the merits sufficient to raise the defense of *res judicata* in a subsequent action between the parties. *See* Wight v. Montana-Dakota Utilities, 299 F.2d 470 (9th Cir. 1962), cert. denied, 371 U.S. 962, 83 S.Ct. 541, 9 L.Ed. 2d 509 (1963) (district court's application of *res judicata* affirmed where previous district court case involving the same issues had resulted both in a summary judgment against plaintiff for failure to state a cause of action and the dismissal of the action). *See also* Glick v. Ballentine Produce, Inc., *supra*.

Plaintiff's final contention in his appeal from Judge Muir's order is that his complaint stated a cause of action against the United Steelworkers and that Judge Muir thus erred in granting the union's motion for summary judgment. The theory of plaintiff's complaint against the union is that it "arbitrarily, capriciously, and without reasonable cause" refused Hubicki's requests to invoke the contract grievance machinery with ACF, thereby violating its statutory duty of fair representation. The standards which govern fair representation suits were recently delineated by

4. "10. That he had asked the Company to allow him to present a grievance, but the Company refused several times, the latest time being April 14, 1971."

the Supreme Court in Vaca v. Sipes, *supra*, 386 U.S. at 190, 87 S.Ct. at 916, as follows: "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." After considering Hubicki's complaint and affidavit as well as the several affidavits introduced by the union, Judge Muir granted summary judgment in favor of the union on the ground that, viewing all the evidence in the light most favorable to the plaintiff, there were no facts alleged sufficient to raise a triable issue of arbitrary, capricious or bad faith conduct on the part of the union.

■ In his brief on this point, plaintiff argues that his affidavit, especially paragraph 14,[5] "overwhelmingly prove(s) the Union's breach of its duty of fair representation." We cannot agree. Paragraph 14 of Hubicki's affidavit is nothing more than plaintiff's statement that, to the best of his knowledge, the union never submitted the question of the timeliness of his grievance to its legal department for an interpretation. When faced by this argument below, Judge Muir correctly observed that the sole issue in this case is not whether plaintiff's grievance was timely raised with the union but is instead whether the union declined arbitrarily, capriciously or in bad faith to process it. There exists no requirement that a union must refer all questions of timeliness to its legal department, especially those such as this which are clear on their face, and the allegation that Hubicki's union should have done so, taken by itself, is not enough to show arbitrary or purposeful discrimination by the union.

■ In addition to paragraph 14, we have examined the other paragraphs of plaintiff's affidavit and find that none of them set forth a triable issue of material fact. Instead, we think that this affidavit, when read together with its exhibits and the affidavits presented by the union, demonstrates that the union's refusal to process plaintiff's grievance was reasonable or in good faith since Hubicki admittedly did not request it to do so within thirty days of his termination by ACF.[6] As the Supreme Court declared in Vaca v. Sipes, *supra*, 386 U.S. at 191–192, 87 S.Ct. at 917,

"Though we accept the proposition that a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion, we do not agree that the individual employee has an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement

---

5. Paragraph 14 provides as follows:
 "14. That whether a thirty (30) day limitation, insofar as filing a written grievance under the contract, was met by your affiant, was a matter for legal interpretation, and to the best of your affiant's knowledge the union never submitted the matter to its legal department for a legal interpretation. That your affiant is now informed by his attorney that whether a grievance is timely filed is a matter for arbitration. Teamsters v. Standard Motor, 260 F. Supp. 269, 273 (M.D.Pa.1966), RCA v. Ass'n, etc., 291 F.2d 105, 110 (3d Cir. 1961)."

6. We note from the union's affidavits that Hubicki formerly served as a shop steward and member of the grievance committee, and that in December of 1969 he utilized the contract grievance machinery to gain reinstatement after he had been discharged for allegedly improper absence from work. Thus it is clear to this court, as it must have been to Judge Muir, that plaintiff was no stranger to the way in which grievances are initiated and processed.
 In addition, one of the exhibits attached to Hubicki's affidavit is a letter dated April 10, 1970, which was written to the Editor of a union publication known as "Steel Labor" and which states in relevant part:
 "On February 24, 1970, I received this information from the A.C. &. F. quote:
 'This is to inform you that you have lost your Seniority . . . .' "
 From this, it was reasonable for the union to assume that on or about February 24, 1970, Hubicki had actual knowledge of his termination.

. . . . In providing for a grievance and arbitration procedure which gives the union discretion to supervise the grievance machinery and to invoke arbitration, the employer and the union contemplate that each will endeavor in good faith to settle grievances short of arbitration. Through this settlement process, frivolous grievances are ended prior to the most costly and time-consuming step in the grievance procedures . . . .

"If the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery provided by the contract would be substantially undermined, thus destroying the employer's confidence in the union's authority and returning the individual grievant to the vagaries of independent and unsystematic negotiation. Moreover, under such a rule, a significantly greater number of grievances would proceed to arbitration. This would greatly increase the cost of the grievance machinery and could so overburden the arbitration process as to prevent it from functioning successfully. [Citations omitted.] It can well be doubted whether the parties to collective bargaining agreements would long continue to provide for detailed grievance and arbitration procedures of the kind encouraged by L.M.R.A. § 203(d), *supra*, if their power to settle the majority of grievances short of the costlier and more time-consuming steps was limited by a rule permitting the grievant unilaterally to invoke arbitration. Nor do we see substantial danger to the interests of the individual employee if his statutory agent is given the contractual power honestly and in good faith to settle grievances short of arbitration. For these reasons, we conclude that a union does not breach its duty of fair representation, and thereby open up a suit by the employee for breach of contract, merely because it settled the grievance short of arbitration."

*See* Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1969), and Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953).

The allegations of a complaint asserting the breach of a union's duty of fair representation must contain more than conclusory statements charging discrimination in order to be actionable. Balowski v. International U., United A., A. & A. Imp. Wkrs., 372 F.2d 829, 835 (6th Cir. 1967). In the present case, the core of plaintiff's complaint is nothing more than a single conclusory statement that the union "arbitrarily, capriciously, and without reasonable course" refused to help plaintiff invoke the contract grievance machinery. His affidavit, as we have previously indicated, fails to allege any substantial facts to support this claim. Plaintiff then has done nothing more than show that he is dissatisfied with the union's actions in this case, that there is a difference of opinion between them. Plaintiff, however, offers no concrete facts from which the presence of hostile discrimination could at least be inferred. On the other hand, there are facts in plaintiff's own affidavit which indicate that there was a rational basis for the union's refusal to process plaintiff's grievance. In view of this, and considering the discretion given unions in grievance disputes by Vaca v. Sipes, we conclude that summary judgment was properly granted in favor of the union.

For all the reasons above, we find that Judge Muir's June 27, 1972 order in 72–1712 granting ACF's motion for judgment on the pleadings and the union's motion for summary judgment must be affirmed.

### III

The judgment of the district court in both cases discussed in this opinion will be affirmed.

GERALD McLAUGHLIN, Circuit Judge (dissenting).

On February 24, 1970 appellant was terminated from his employment by his employer ACF Industries, Inc.

On April 28, 1971 appellant filed a civil suit against his employer asking for reinstatement and money damages from the defendant company. On May 27, 1971 the defendant company filed a petition for removal to the Middle District, Pennsylvania. Why that petition was granted does not appear. Said company then filed a motion for summary judgment which was also granted on November 4, 1971. The trial court on April 10, 1972 refused appellant's motion to allow grievance procedure to be used in connection with the employment contract. Appellant thereafter appealed to this court. Hubicki filed a new complaint. Appellee claims that the fresh complaint was barred by the November 4, 1971 summary judgment (this is said to be presently pending, presumably in the Middle District of the United States District Court, Pennsylvania).

Appellant contends that the Collective Bargaining Agreement between the employer and employee's union (United Steelworkers) is helpful to his claim for reinstatement by his employer under the facts. Appellant has been with appellee for twenty-three years, his whole working lifetime so far. In Republic Steel Corporation v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), the Supreme Court held that employer must attempt the use of contract grievance procedure as to the mode of redress. See Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). See also the Maddox case above noted. The district court flatly refused to allow appellant to amend his complaint thus putting appellant right out of court. His claim was never disposed of on its merits. We held in Martucci v. Moyer, 210 F.2d 259 (3 Cir. 1954) in a similar situation that summary judgment was not to be allowed as appellant's claim was not decided on the merits. At most the court should have abated the action and not bar it completely as was done here. See also Whitner v. Davis, 410 F.2d 24, 31 (9 Cir. 1969), where even with summary judgment against plaintiff under Rule 15(a), he was entitled to an amendment as plaintiff in this matter is. At most, the action should have been abated until the complaint set up the cause of action properly.

The first complaint in suit is against the employer and we have seen the latter's attitude toward Hubicki.

We now take up the action as to plaintiff Hubicki's claim against his union. On February 1, 1970 appellant's home in Danville was burned to the ground. For two weeks after that, in the middle of the Pennsylvania winter he tried to repair a house in Danville so that he, his wife and family could exist there for the time being. He had that job fairly well accomplished by February 14. He had already notified his employer that he needed time to put the house he was fixing into livable condition. He had the substitute housing basically ready by April 1, 1970. His own family stayed with relatives meanwhile. A letter from his employer terminating his rights did not reach him until sometime around the beginning of April 1970. He promptly notified his union representative who tried to have the employer rescind its action but was told by his union nothing could be done about it. He then asked the company to allow him to present his grievance in accord with the employment contract but the company refused several times. It comes up clearly that at the first chance the union and employer had at Hubicki in twenty-three years they both betrayed the trust that appellant had an absolute right to expect from the both of them. Hubicki's union had the bounden duty to protect the appellant member in his tragic predicament where he had to secure shelter for his wife and children as quickly as possible. The employer knew of Hubicki's problem. There is nothing in this entire case that even attempts to charge that there was any fault whatsoever on the part of the plaintiff. There was basically not the slightest effort on the part of the union or the employer to help Hubicki obtain living quarters for his people and himself and so to enable him to return to his job.

The result before us is unconscionable in the brazen disregard by the union and the employer of their duties to Hubicki.

I would reverse the judgment of the district court and order that the union and the employer see to it forthwith that appellant is restored to his job. Whatever wages appellant has lost because of the attitudes of the union and the employer should be ordered to be paid to appellant immediately, half by said union and half by the employer.